C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **M.P. and D.S.**

**No. 25-26** (Wyoming County CC-55-2023-JA-63 and CC-55-2023-JA-64)

**MEMORANDUM DECISION**

Petitioner Mother A.W.[1] appeals the Circuit Court of Wyoming County's December 18, 2024, order terminating her parental rights, arguing that the circuit court erred in failing to require the DHS to file a family case plan and terminating her parental rights.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The DHS filed an initial petition in December 2023, alleging that the petitioner failed to protect M.P. from sexual abuse. When a Child Protective Services ("CPS") worker interviewed M.P., the then-ten-year-old child disclosed sexual abuse by a man dressed in black, including incidents that occurred in the petitioner's boyfriend's vehicle when he took her out with him late at night and left her unattended.[3] M.P. also described incidents in the home, including a time when the man kissed her in the petitioner's presence. In January 2024, the DHS filed an amended petition to include allegations of the petitioner's neglect of both the children's basic needs including proper hygiene, as M.P. was "obviously filthy and smelled terrible" upon removal and could not remember the last time she had showered.

At the preliminary hearing in January 2024, a CPS worker testified that after the petition was filed, the petitioner and the boyfriend disclosed their belief that the unknown "man in black" was the petitioner's brother who resided in their home. When the petitioner questioned her brother, he admitted to masturbating in front of M.P., and she removed him from the home.

The court held an adjudicatory hearing in March 2024. The petitioner submitted a written stipulation, which the court thoroughly reviewed with her on the record. The petitioner stipulated to failing to protect M.P. from sexual abuse by a family member as well as to "inadequate home

---

[1] The petitioner appears by counsel Latachia N. Miller. The Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Andrew T. Waight. Counsel Lela Walker appears as the children's guardian ad litem ("guardian").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] The boyfriend is D.S.'s biological father.

conditions" and "inadequate hygiene of [M.P.]." On this basis, the court adjudicated the petitioner as a neglectful parent and M.P. and D.S. as abused and/or neglected children. The stipulation also included the petitioner's request for a post-adjudicatory improvement period, listing terms and conditions to be "incorporated and made a part of the Case Plan for [the petitioner's] improvement period." These included establishing and maintaining a clean and appropriate home and participating in all programs and services the DHS suggested. The court granted the petitioner an improvement period, reviewing its salient terms and conditions with her on the record. The petitioner subsequently filed an additional motion for a post-adjudicatory improvement period, again stating that she "accepted responsibility for her actions" and "acknowledged the factual circumstances surrounding the allegations of abuse and/or neglect." The court's adjudicatory order stated that the DHS must prepare and submit a family case plan, however, a family case plan was never filed.[4]

In June 2024, the DHS moved to revoke the petitioner's improvement period, and in July 2024, the DHS filed the results of the petitioner's psychological evaluation. The evaluator found that the petitioner's prognosis for improved parenting was "very poor" given, among other things, her minimal acceptance of responsibility. While the petitioner admitted that she needed to make some home repairs, she denied neglecting the children, stating that she cleaned every day and that the children "always stayed clean." She acknowledged that her brother had sexually abused M.P. but stated that M.P.'s allegations regarding a second perpetrator (the man in black) were "not true." The evaluator concluded that "there are no services or interventions . . . that could be expected to improve [the petitioner's] parenting within a reasonable amount of time, if at all," and that "[e]ven if such services . . . [did] exist, there [was] no reason to believe [that the petitioner] would benefit . . . because she possesses little to no insight into how she has neglected her child[ren]."

In July 2024, the circuit court held a hearing on the DHS's motion to revoke the petitioner's improvement period. A CPS worker testified that although she "had [the petitioner] in many services, almost all that you could put [a parent] in," and although the petitioner had relocated to a new residence, the home's conditions remained unsafe. There was "no proper flooring," "wires hanging out," and "[t]he home was very cluttered" with trash piled up outside. The petitioner had not demonstrated the ability to apply what she was being taught, nor had she "accepted . . . responsibility for the abuse and neglect." During one multidisciplinary team ("MDT") meeting, the petitioner accused the CPS worker of brainwashing M.P. and became so hostile that the MDT called law enforcement. M.P.'s psychotherapist, who testified as an expert witness, stated that the child suffered from severe post-traumatic stress disorder and had "talked at great length about two adult men that ha[d] allegedly sexually assaulted her"—the petitioner's brother and the man in black—and had described being raped. The hearing was continued to August 2024, at which time the court heard from a Wyoming County Day Report Center employee who testified to the petitioner's participation in services. The CPS worker again testified that the petitioner was "not . . . gaining any insight" and would not acknowledge the abuse and neglect. Ultimately, the court concluded that the petitioner's home remained unfit and that her participation in services "[had not] made a difference in her understanding as to why she is in this courtroom in the first

---

[4] On appeal, the DHS avers that a family case plan was prepared and approved, and even signed by the petitioner's counsel, but acknowledges that this document was never filed.

place." The court found that the petitioner had "no . . . insight as to . . . the vulnerability of [D.S], and the injury to [M.P.]." In its subsequent written order, the court found that the petitioner was not progressing, had failed to fully participate in her improvement period, and had not corrected the behavior that led to the children's removal. Accordingly, the court revoked the petitioner's post-adjudicatory improvement period and set the matter for disposition.

The court held a dispositional hearing in December 2024. The petitioner testified that she was a good parent, had "always protected [her] kids from everything," and that her "kids had baths every day." She stated that the necessary repairs to her residence were "almost done," but admitted there were "a couple" of exposed wires, and that the floors needed to be replaced and "a couple of walls [put] up." The petitioner acknowledged that M.P. had been sexually abused. However, when asked if she believed that M.P. had been molested by multiple perpetrators, not just her brother, she stated: "I'm not saying that I don't believe her, . . . I do, but where's the proof?" She felt that M.P. was "using her imagination" regarding the man in black and admitted to requesting M.P.'s medical records from the guardian to try to prove that the child was fabricating the allegations due to mental illness. A CPS worker again testified that the petitioner's home was unfit, despite her receipt of adult life skills services which addressed how to maintain a clean home. The CPS worker also reported that during a supervised visit with D.S., the petitioner stated that the sexual abuse "wasn't as bad as what [M.P.] had stated" because her brother "just pleasur[ed] himself in front of [the child]" and "did not actually have intercourse with [her]." Critically, the worker testified that the petitioner had still not accepted responsibility, as she had called the DHS "on and off" since the August 2024 hearing, stating that "nothing ever happened" and the children "were never abused and neglected." The worker recommended termination of the petitioner's rights.

Based on this evidence, the court found that the petitioner's failure to protect had continued and that she had "insufficiently addressed" the condition of her home. In its subsequent written order, the court concluded that the petitioner "had not maintained a safe and clean home and had not applied the life skills and techniques . . . [she learned] while on her improvement period to her life," and was therefore "presently unable or unwilling to provide adequately for the needs of the children." The court further found that "there [was] no reasonable likelihood that the [petitioner] [would] be able to substantially correct the neglect that necessitated the . . . proceedings in the near future" and that termination was in the children's best interests, as they needed "to have continuity in care and caretakers, and a significant amount of time is required to be integrated into a stable and permanent home environment." Accordingly, the court terminated the petitioner's parental rights.[5] The petitioner now appeals this dispositional order.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner asserts that the circuit court erred in terminating her rights because the DHS failed to file a family case plan. The petitioner is correct that the DHS must file a family case plan within thirty days after a court has granted an improvement period. *See* W. Va. R. P. Child Abuse & Neglect Proc. 37; W. Va. Code

---

[5] The court terminated D.S.'s father's parental rights, and the permanency plan for the child is adoption in the current placement. The permanency plan for M.P. is reunification with her nonabusing father with a concurrent plan of adoption in the current placement.

§ 49-4-408. It is undisputed that this did not occur below. However, the petitioner fails to establish how this error prejudiced her. This Court has held that "[t]he purpose of the family case plan . . . is to clearly set forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving or lessening these problems." Syl. Pt. 2, in part, *In re Desarae M.*, 214 W. Va. 657, 591 S.E.2d 215 (2003) (quoting Syl. Pt. 5, *State ex rel. W. Va. Dep't of Hum. Servs. v. Cheryl M.*, 177 W. Va. 688, 356 S.E.2d 181 (1987)). Here, the petitioner's written stipulation identified the problems she needed to resolve (including inadequate home conditions) and how she would address these issues (including participating in the services the DHS suggested and maintaining an appropriate home). Upon granting the petitioner an improvement period, the court reviewed its terms with her on the record, ensuring—among other things—that the petitioner understood what was meant by a suitable home. And while the petitioner argues on appeal that "it was impossible for [her] to comply with a [f]amily [c]ase [p]lan that was never provided," she does not assert (nor did she argue below) that she was confused about what she needed to do to regain custody of the children. At a minimum, the record indicates that the petitioner was fully aware that she must obtain/maintain a suitable residence and that she failed to do so, despite participating in services specifically aimed at resolving the issue. We therefore find no reversable error, as vacating the court's order due to the DHS's failure to file a family case plan is not warranted under these circumstances. *See* Syl. pt. 5, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001) (requiring vacation of dispositional orders when the process of abuse and neglect proceedings has been "substantially disregarded or frustrated"); *see also In re H.D.*, No. 23-148, 2024 WL 4503958, at *4 (W. Va. Oct. 16, 2024) (memorandum decision) (affirming termination of parental rights where the DHS failed to file a case plan where the petitioner "knew what was required to successfully address the conditions of abuse and neglect").

Next, the petitioner asserts that the circuit court abused its discretion in terminating her parental rights, as it failed to consider a less restrictive disposition.[6] However, "[t]ermination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). Sufficient evidence supports the circuit court's finding that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect in this case. In addition to the petitioner's failure to maintain a clean and appropriate home (discussed more thoroughly above), she repeatedly failed to acknowledge her culpability in the neglect of the children. "[I]n order to remedy [an] abuse and/or neglect problem, the problem must first be acknowledged." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W. Va. 208,

---

[6] The petitioner raises another assignment of error alleging that the court erred in denying her a post-dispositional improvement period. While the petitioner's counsel made an *oral* motion for a post-dispositional improvement period, "[a] circuit court may not grant an . . . improvement period . . . unless the [petitioner] . . . files a *written* motion requesting the improvement period." Syl. Pt. 4, in part, *State ex rel. P.G.-1 v. Wilson*, 247 W. Va. 235, 878 S.E.2d 730 (2021) (emphasis added). The petitioner does not include a written motion for a post-dispositional improvement period in the record on appeal, nor does it appear a written motion was ever filed. As such, the petitioner is not entitled to relief.

217, 599 S.E.2d 631, 640 (2004)). This is because a parent's "[f]ailure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect . . . , results in making the problem untreatable." *In re Timber M.*, 231 W. Va. at 55, 743 S.E.2d at 363 (quoting *In re Charity H.*, 215 W. Va. at 217, 599 S.E.2d at 640). While the petitioner claimed to accept responsibility at adjudication, she subsequently denied that the children were abused or neglected and repeatedly downplayed and/or disbelieved the sexual abuse inflicted upon M.P. As such, the petitioner "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [her] own or with help." W. Va. Code § 49-4-604(d) (defining "[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected").

Moreover, the circuit court found, upon ample evidence, that termination was in the children's best interests. In an additional assignment of error, the petitioner asserts that this finding was clearly erroneous, arguing that it was in the children's best interests to be with her given the "firmly established" rule that "the right of a natural parent to the custody of . . . her infant child is paramount to that of any other person." Syl. Pt. 1, in part, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973). However, "the right of the natural parent to the custody of minor children is not absolute and may be limited or terminated by the State . . . if the parent is proved unfit." *Id.* at 225, 207 S.E.2d at 131, Syl. Pt. 5, in part. The petitioner's argument therefore lacks merit, as she fails to account for her adjudication as a neglectful parent as well as the court's finding at disposition that she was unable to remedy the conditions of neglect.[7] Circuit courts are permitted to terminate a parent's rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is "necessary for the welfare of the child[ren]." W. Va. Code § 49-4-604(c)(6). Accordingly, we conclude that the circuit court did not err in terminating the petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 18, 2024, order is affirmed.

Affirmed.

**ISSUED**: January 29, 2026

---

[7] The petitioner also asserts that termination was not in the children's best interests because there was testimony that she had substantially complied with her improvement period. However, after considering the evidence presented at a hearing on this matter, the circuit court revoked the petitioner's improvement period specifically finding that she failed to fully participate. We will not disturb this finding on appeal. *See In re D.S.*, 251 W. Va. 466, --, 914 S.E.2d 701, 707 (2025) (explaining that, as a reviewing court, "[w]e . . . do not reweigh the evidence"); *see also* Syl. Pt. 1, in part, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177(1996) (stating that a reviewing court "must affirm a finding if the circuit court's account of the evidence is plausible in light of the record"). The petitioner's argument is meritless as the circuit court's finding is supported by the record.

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III